UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
FREDA LE PREVOST,

                        Plaintiffs,

        -against-                        03 Civ. 2544 (DAB)
                                         MEMORANDUM AND ORDER
NEW YORK STATE, NEW YORK STATE
OFFICE OF PARKS, RECREATION AND
HISTORIC PRESERVATION and
DARCEL MICHEL,

                        Defendants.
--------------------------------X
DEBORAH A. BATTS, United State District Judge,

    Plaintiff Freda Le Prevost ("Plaintiff" or "Le Prevost")

brings this action pursuant to Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII")

against Defendants New York State and the New York State Office

of Parks and Recreation ("Parks") (collectively "State

Defendants" or "Defendants").  Plaintiff previously alleged four

counts: (1) Sexual Harassment and Constructive Discharge in

violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. 2000e et. seq. ("Title VII"); (2) Intentional

Infliction of Emotional Distress; (3) Failure to Accommodate in

violation of the Americans with Disabilities Act, 42 U.S.C. §

12101 et seq. ("ADA"); and (4) a violation of § 504 of the

Rehabilitation Act.  In the Parties' Joint Pre-Trial Statement,

dated January 30, 2007, Plaintiff attempts to bring additional

Disparate Impact and Disparate Treatment claims under Title VII,

as well as a claim for Selective Treatment under the Equal
Protection Clause.  Only Plaintiff's Title VII claims, including
her Hostile Work Environment, Quid Pro Quo Harassment,
Constructive Discharge, and newly alleged Disparate Impact,
Disparate Treatment and Equal Protection claims remain before
the Court.[1]

State Defendants now move for summary judgment seeking
dismissal on the remainder of Plaintiffs Title VII claims.
State Defendants also challenge Plaintiff's newly asserted
claims pursuant to Rule 56 of the Federal Rules of Civil
Procedure ("Fed. R. Civ. P.").  Plaintiff opposes Defendants'
Motion and cross moves to further amend the Amended Complaint.
For the following reasons, Defendants' Motion for Summary
Judgment is GRANTED and Plaintiff's Cross-Motion to Amend is
DENIED.

## I.  BACKGROUND

The factual background of this action is detailed at length
in both the January 5, 2004 and September 29, 2006 Orders.  The

---

[1] By Order and Memorandum of Judge Constance Baker Motley, dated
January 5, 2004, Plaintiff's ADA claim and her claim of
Intentional Infliction of Emotional Distress against State
Defendants were dismissed.  In addition, by Order of this Court,
dated September 29, 2006, State Defendants' Motion for Partial
Summary Judgment was granted, thereby dismissing Plaintiff's
Rehabilitation Act claims and all claims against Defendant
Darcel Michel.

Court assumes general familiarity with the facts set forth
therein.

Additional Facts relevant to Plaintiff's Title VII claims
and claims for Disparate Impact, Disparate Treatment and Equal
Protection are set forth below.

Mr. Beedz Pierre ("Pierre") has been employed by Defendants
at Riverbank State Park since 1995. (Defs.' 56.1 Statement ¶
43.) In November of 1995, Pierre sustained an injury while
skating and consequently was no longer comfortable working, as
he had previously done, as a skate guard during the winter
season. (Id. at 45-46; Weinreb Affidavit of April 5, 2007 ¶
23.) However, following his injury he continued to perform the
duties of his maintenance position, (Weinreb Aff. at ¶ 23),
which included some of the same duties as the position of
Assistant Park Recreation Specialist, and was training to take
over the operation and maintenance of the zamboni machine
("zamboni") which is used to preserve the smooth service of the
ice. (Defs.' 56.1 Statement ¶ 46-47.) After Pierre completed
this training, he became the person primarily responsible for
carrying out all duties related to the zamboni. (Id. ¶ 48.)
During his tenure at Riverbank State Park, Pierre was promoted
several times and held the title Assistant Park Recreation
Activity Specialist during the 2001-02 winter season. (Id. ¶
49-50.)

## II.  DISCUSSION

State Defendants move for summary judgment on the remainder of Plaintiff's Title VII claims pursuant to Rule 56 of the Fed. R. Civ. P. and challenge Plaintiff's newly alleged Disparate Impact, Disparate Treatment and Equal Protection claims. (Defs.' Mem. Law. at 2.)  Defendants argue that Plaintiff has failed to meet her burden by producing evidence sufficient to allow a trier of fact to find in her favor.  (Defs.' Reply Mem. Law at 1.)  Plaintiff opposes this motion and cross moves to amend her Complaint a second time, for the purpose of adding her Disparate Impact, Disparate Treatment and Equal Protection claims.  (Pl.'s Mem. Law in Opp. at 1.)  Plaintiff argues that the newly alleged claims relate back to the original EEOC Charge and thus that amendment should be permitted.  (Id. at 16.)  In opposition to Plaintiff's Motion to Amend, Defendants contend that Plaintiff's Complaint should be denied on the grounds that her motion is "procedurally defective and untimely and because the claims are substantively deficient."  (Defs.' Reply Mem. Law at 8.)

### A.   Summary Judgment Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving

4

party is entitled to judgment as a matter of law.  Fed R. Civ.
P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave.,
Inc., 219 F.3d 104, 107 (2d Cir. 2000).  Genuine issues of
material fact cannot be created by mere conclusory allegations;
summary judgment is appropriate only when, "after drawing all
reasonable inferences in favor of a non-movant, no reasonable
trier of fact could find in favor of that party."  Heublen v.
United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing
Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S.
574, 587-88 (1986)).

        In assessing when summary judgment should be granted, there
must be more than a 'scintilla of evidence' in the non-movant's
favor; there must be evidence upon which a fact-finder could
reasonably find for the non-movant." Id. (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While a court
must always "resolv[e] ambiguities and draw[ ] reasonable
inferences against the moving party," Knight v. U.S. Fire Ins.
Co., 804 F.2d 9, 11 (2d Cir.1986) (citing Anderson ), the non-
movant may not rely upon "mere speculation or conjecture as to
the true nature of the facts to overcome a motion for summary
judgment." Id. at 12.  Instead, when the moving party has
documented particular facts in the record, "the opposing party
must 'set forth specific facts showing that there is a genuine
issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d

Cir.1986) (quoting Fed.R.Civ.P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000) (citation omitted).  Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id.

Whether summary judgment is appropriate in a discrimination case depends upon "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered."[2]  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148-49 (2000); see also Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (holding that "Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff'").

Summary judgment is ordinarily inappropriate in a Title VII action where a plaintiff has established a *prima facie case*. Smith v. American Express Co., 853 F.2d 151, 154 (2d Cir. 1988).

---

[2] Reeves was decided under Fed. R. Civ. P. 50 (not Rule 56 as in the instant case), however "the inquiry under each is the same." Reeves, 530 U.S. at 150.

6

However, where a plaintiff establishes a *prima facie* case and presents some evidence of pretext, summary judgment may still be appropriate where, for instance, the record conclusively reveals a nondiscriminatory reason for the employer's action, or where the plaintiff creates "only a weak issue of fact" on the issue of pretext and there exists "abundant and uncontroverted independent evidence that no discrimination [has] occurred." Schnable, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 148 (internal quotations omitted).

The question on a summary judgment motion in a discrimination case is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough . . . to disbelieve the employer; the fact finder must [also] believe the plaintiff's explanation of intentional discrimination." Weinstock, 224 F.3d at 42 (quoting St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 519 (1993)).

## B.    Plaintiff's Title VII Sexual Harassment Claims

Title VII of the Civil Rights Act of 1964 provides, in pertinent part:

> It shall be an unlawful employment practice for an
> employer to fail or refuse to hire or to discharge any
> individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of

7

> such individual's . . . sex, . . .; or to limit,
> segregate, or classify his employees or applicants for
> employment in any way which would deprive or tend to
> deprive any individual of employment opportunities or
> otherwise adversely affect his status as an employee,
> because of such individual's . . . sex.

42 U.S.C § 2000e-2(a). A plaintiff may make a sexual harassment
claim under Title VII under two theories: (1) *Quid Pro Quo*
Harassment and (2) Hostile Work Environment. Karibian v.
Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994).


### 1. *Quid Pro Quo* Harassment

Reviewing Plaintiff's submissions liberally, Plaintiff
appears to argue that she was deprived of "employment
opportunities" at Riverbank State Park because she did not
respond favorably to Michel's romantic and sexual advances, or
other attempts to engage in a social relationship. (Am. Compl.
¶ 33; Pl.'s Mem. Law in Opp at 7-9.)

*Quid pro quo* harassment occurs when "submission to or
rejection of [unwelcome sexual] conduct by an individual is used
as the basis for employment decisions affecting such
individual." Karibian 14 F.3d at 777 (quotations and citations
omitted); see also Gallagher v. Delaney, 139 F.3d 338, 346 (2d
Cir. 1998). "Simply put, the question is whether plaintiff's
supervisor 'linked tangible job benefits to the acceptance or
rejection of sexual advances.'" Hamilton v. Bally of Switz.,

No. 03 Civ. 5685, 2005 WL 1162450, *4 (S.D.N.Y. May 17, 2005)
(quoting Karibian, 14 F.3d at 778).

    Plaintiff alleges that her rejection of Michel's advances
led Michel to deny Plaintiff's request to refrain from working
as a skate guard following her injury.  (Pl.'s Mem. Law in Opp
at 6.)  However, as this Court has previously held, "Plaintiff
could not perform the necessary duties of her job, which is
admittedly a very physical job" and that, "all of the evidence
[in the instant case] supports Defendants' claim that Plaintiff
was hired as an 'Assistant Recreation Activity Specialist.'"
(Sept. 29, 2006 Order at 23.)  Further, reviewing the record
once more on this Motion for Summary Judgment, the Court finds
that the role of skate guard was among Plaintiff's primary
duties as an Assistant Recreation Activity Specialist.  (See
e.g., Defs.' 56.1 Statement at Ex. E (listing Plaintiff's work
location as "RBSP Skating Rink"); id. at Ex. C (listing on
Employment Application that Plaintiff's "Job Related Skills"
include "Inn-Line Skate Instructor, Basic, Safety, and
intermediate level skills, Inn-Line Free Style . . .")

    In support of her assertion that Michel attempted to foster
a social relationship with her, Plaintiff claims that "[I]t was
Freda who was not interested in dancing with Michel . . . and
when she rebuffed him and responded to Pierre, he had Pierre
engaged [sic] her in an affair only to drop her a few months

9

later." (Pl.'s Mem. Law in Opp. at 8.) However, this unsubstantiated and seemingly unbelievable claim that Michel convinced Pierre to fake an extended relationship with Plaintiff is not credible.

Additionally, Michel's alleged characterization of Plaintiff as a "fatal attraction" when speaking with other employees is taken completely out of context by Plaintiff. (See Pl.'s Mem. Law in Opp. at 7.) Several times, Plaintiff cites to an E-mail written by Michel on February 6, 2002, as the source of documentation of the infamous "fatal attraction" comment. However, contrary to Plaintiff's assertions, while Michel admits in the email to informing co-workers of Plaintiff's erratic behavior surrounding an encounter on December 23, 2001, he does not admit to relaying his impression of Plaintiff as a "fatal attraction" to other employees at Riverbank State Park. (See Pl.'s Mem. Law in Opp. at 12; Pl.'s 56.1 Statement, Ex. W.) Furthermore, the actual text and context of the E-mail suggests a different conclusion - that Michel believed that she was the aggressor: he was the Michael Douglas character and Plaintiff was the Glenn Close character in the movie Fatal Attraction - stating, "I felt she was sick and that perhaps this was a case of fatal attraction," that "[Plaintiff] is and was the aggressor," and that "she ask [sic] me to dance, and when I

10

would not, she claimed I was all talk and no action." (Pl.'s
56.1 Statement, Ex. W.)

Furthermore, Plaintiff implies that Michel's
"socialization" with Plaintiff outside of work was one of the
"inappropriate actions" for which Michel was "found to be
guilty" during a review of his disciplinary notice by the
American Arbitration Association ("AAA").[3]  (See Pl.'s Mem. Law
in Opp. at 7.)  However, upon review of the aforementioned Award
and Opinion, it is apparent the AAA came to a different
conclusion.  With respect to Plaintiff's assertion that Michel
"pursued a social relationship" with her, Mr. Pohl stated:

> Although the State identified no policy that expressly
> forbids a supervisor from dating a subordinate, certainly
> socializing with Le Prevost outside work exhibited poor
> judgment, particularly in light of his training in sexual
> harassment, and his assignment as a sexual harassment
> trainer.  Nevertheless, although Michel should have
> exercised better judgment and not pursued . . . 'a social
> relationship' with Le Prevost, I reject Le Prevost's
> assertion that Michel's actions were unwanted or uninvited.

(Pl.'s 56.1 Statement, Ex. K, AAA Opinion & Award at 20-21)
(emphasis added.)

Finally, although Michel's alleged efforts to interact with
Plaintiff on a social level may have been an exercise in poor
judgment, this Court has previously held that the alleged

---

[3] On or about August 30, 2006, Stuart M. Pohl, Esq. of the
American Arbitration Association ("AAA") issued an Award and
Opinion granting in part and denying in part Plaintiff's
grievance.

inappropriate actions and socialization by Michel "hardly
qualify as conduct outside the realm of normal workplace
interactions." (Sept. 29, 2006 Order at 27.)

The record establishes that Plaintiff's employment involved
acting as a skate guard and that after her injury she was unable
to perform adequately that job.  It does not satisfactorily
establish, however, that Michel's invitations, even assuming
they were unwelcome, constituted "sexual advances."  Thus, there
is no factual support for Plaintiff's assertion that her
rebuttal of Michel's alleged advances was the basis of a denial
of employment opportunities.

As Plaintiff has failed to present evidence of a genuine
issue of material fact regarding her claim of *Quid Pro Quo*
Sexual Harassment under Title VII, Defendants' Motion for
Summary Judgment on this claim is GRANTED.  See Stuart v.
American Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998), cert.
den'd, 526 U.S. 1065 (1999); see also Weinstock, 224 F.3d at 41
(holding unsupported allegations in the pleadings cannot create
a material issue of fact).


2. Hostile Work Environment

Relying on alleged incidents of sexual harassment committed
by Michel, Plaintiff further posits that she was subject to a
hostile work environment at Riverbank State Park on the basis of

her gender. (Am. Compl. ¶ 31-32.) Defendants move for summary
judgment, arguing that Plaintiff cannot meet her burden of
establishing a *prima facie* case of a hostile work environment.
(Defs.' Reply Mem. Law at 4.)

The Supreme Court has held that Title VII is violated
"[w]hen the workplace is permeated with discriminatory
intimidation, ridicule, and insult, that is sufficiently severe
or pervasive to alter the conditions of the victim's employment
and create an abusive working environment." Harris v. Forklift
Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal
quotation marks omitted). To succeed on her hostile work
environment claim, Plaintiff must show that (1) her workplace
was permeated with discriminatory intimidation sufficiently
severe or pervasive to alter the conditions of her work
environment; and (2) a specific basis exists for imputing the
conduct that created the hostile environment to the employer.
Richardson v. New York State Dep't of Correctional Serv., 180
F.3d 426, 436 (2d Cir. 1999), *abrogated on other grounds by*
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

"A work environment will be considered hostile if a
reasonable person would have found it to be so and if the
plaintiff subjectively so perceived it." Brennan v. Metro.
Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999). Whether a
reasonable person would find a given work environment to be

13

hostile depends on the "totality of the circumstances,"
consideration of which includes: "(1) the frequency of the
conduct, (2) the severity of the conduct, (3) whether the
conduct is physically threatening or humiliating, or a mere
offensive utterance, and (4) whether the conduct unreasonably
interferes with the employee's work performance." Id.
Furthermore, "it is 'axiomatic' that in order to establish a
sex-based hostile work environment under Title VII, a plaintiff
must demonstrate that the conduct occurred because of her sex."
Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting
Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).

    Here, Plaintiff, in an effort to defeat summary judgment,
makes conclusory allegations referencing "incidents" that she
argues demonstrate the hostile work environment to which she was
subjected at Riverbank State Park.  (Pl.'s Mem. Law in Opp. 10-
13.)  Plaintiff focuses on Michel's conduct as the basis of her
claim, terming his behavior a "campaign of harassment,"
referencing "complaint sessions" in which Plaintiff was the
topic of conversation.  (Pl.'s Mem. Law in Opp. at 11 (citing
Pl.'s 56.1 Statement, Ex. W).)

    Yet these accusations rely largely on Michel's February 6,
2002 E-mail and Plaintiff's E-mail to Michel of December 14,
2001, both of which Plaintiff repeatedly cite to and quote out
of context in a manner that distorts their actual content.

14

(Pl.'s 56.1 Statement, Exs. W, X.)  For instance, Plaintiff asserts, citing to her email of December 14, that "[t]he work place had been made toxic against Ms. Le Prevost by Defendant-Michel" while the actual E-mail in no way attributes the alleged 'toxicity' to Michel. (Pl.'s Mem. Law in Opp. at 12 (citing Pl.'s 56.1 Statement, Ex. X.))  The two depositions that Plaintiff cites in further support of this allegation suggest, if anything, that Michel handled difficult and sometimes contentious work situations in a mature and appropriate manner for a supervisor.  (Id. at 12 (citing Pl.'s 56.1 Statement, Exs. S, R).)  Furthermore, Plaintiff asserts that Michel "acknowledges that he created a hostile work environment against Ms. Le Prevost in an E-mail from himself to his supervisor," while the actual E-mail suggests quite the opposite and concludes with Michel's assertion that "all [he] tried to do was to guide [Plaintiff] in be[ing] a professional and good employee[;] the kind of employee that gets [along] with other workers, respect[s] herself, her coworkers, the supervisors and [sic] to basically do her job."  (Id. (citing Pl.'s 56.1 Statement, Ex. W.))

Given this evidence, the Court can only reiterate its earlier finding that on the record presented, Michel's interactions with Plaintiff "hardly qualify as conduct outside the realm of normal workplace interactions."  (Sept. 29, 2006

15

Order at 27.)   The record is insufficient to establish

discriminatory intimidation, let alone that which is

sufficiently severe or pervasive to alter the conditions of a

plaintiff's work environment.   See Richardson, 180 F.3d at 436;

see also Carrero v. New York City Hous. Auth., 890 F.2d 569, 577

(2d Cir. 1989) ("[t]he incidents must be more than episodic;

they must be sufficiently continuous and concerted in order to

be deemed pervasive").   Plaintiff has not identified a genuine

issue of material fact as to the existence of sexual harassment

in her workplace.   Accordingly, Defendants' Motion for Summary

Judgment is GRANTED.


        C. Constructive Discharge

        Plaintiff avers that she was constructively discharged as a

result of the allegedly intolerable conditions to which she was

subjected at Riverbank State Park.   (Am. Compl. ¶ 38.)

Defendants contend that Plaintiff has failed to satisfy the

elements of her Constructive Discharge claim pursuant to Title

VII and thus move for summary judgment.   (Defs.' Mem. Law at

15.)

        To establish a Constructive Discharge claim under Title

VII, a plaintiff must show "that her employer deliberately and

discriminatorily created work conditions 'so intolerable that a

reasonable person in the employee's position would have felt

16

compelled to resign." <u>Ferraro v. Kellwood Co.</u>, 440 F.3d 96, 101

(2d Cir. 2006) (<u>quoting</u> <u>Pennsylvania State Police v. Suders</u>, 542

U.S. 129, 146-147, 124 S.Ct. 2342 (2004)).  In order to sustain

a claim of constructive discharge, a plaintiff must truly show

"deliberate action" on the part of her employer.  <u>Lopes v. Caffe</u>

<u>Centrale, LLC</u>, 548 F. Supp. 2d 47, 54 (<u>quoting</u> <u>Whidbee v.</u>

<u>Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 74 (2d Cir.

2000)).  Summary judgment is proper on a constructive discharge

claim pursuant to Title VII when the plaintiff fails to

demonstrate that conditions were so intolerable that she was

effectively forced to resign.  <u>See, e.g.</u>, <u>Petrosino v. Bell</u>

<u>Atl.</u>, 385 F.3d 210, 231 (2d Cir. 2004).

In the instant case, Plaintiff alleges that by requiring

her to act as a skate guard, Michel prevented her from being

able to satisfy safely her job requirements and thus "forced

[Plaintiff] to accept Worker's Compensation because she was

unable to work with an injured leg."  (Pl.'s Mem. Law in Opp. at

14 (<u>citing</u> Pl.'s 56.1 Statement, Ex. B ¶ 14).)

The evidence presented conclusively establishes that

following Plaintiff's injury, she went on leave and received

workers' compensation payments which continued past the pre-

determined end-date of her employment.  (Defs.' 56.1 Statement ¶

26-32.)  Furthermore, in light of the conditions of her seasonal

employment and her resulting lack of eligibility for coverage

under the time and attendance rules in place, she was
automatically removed from the payroll system during the term of
her leave.  (Id.)  Ultimately, Plaintiff remained on leave and
received workers compensation past the date of termination of
her seasonal employment because she was medically unfit to
return to work.  (Id.)

     In granting Defendants' previous Motions for Summary
Judgment, this Court determined that Plaintiff was unable to
establish the required elements of a Rehabilitation Act claim
because ". . . Plaintiff was unable to perform her job of
activity specialist in light of her doctor's directive to stay
off her foot," and further that "Plaintiff could not be
reasonably accommodated without eliminating the essential
components of the job she had been hired to do."  (Sept. 29,
2008 Order at 25.)  Therefore, Plaintiff has failed to present
evidence sufficient to establish constructive discharge pursuant
to Title VII.  See Garone v. UPS, Inc., 436 F. Supp.2d 448, 471
(E.D.N.Y. 2006) (finding the evidence insufficient to support a
constructive discharge claim when plaintiff's failure to return
to work was motivated by her medical condition and consequent
inability to perform the requirements of her position.)

     In her Opposition to Defendants' Motion for Summary
Judgment, Plaintiff makes a retaliation argument in support of
her constructive discharge claim (Pl.'s Mem. Law in Opp. at 15.)

Plaintiff alleges that by not giving her a new job at Riverbank State Park, "Michel's supervisors obviously retaliated against Le Prevost for reporting the [sexual harassment] incident to them." (Id.)

In order to establish a *prima facie* case of retaliatory conduct, a plaintiff must demonstrate ". . . [1] participation in a protected activity known to the defendant, [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." Terry v. Ashcroft, 336 F.3d 128, 141 (1993). If a plaintiff has established her *prima facie* case, a presumption of retaliation is established and the burden shifts to the defendant, but in the instant case Plaintiff has failed to meet her burden. See James v. New York Racing Assoc., 233 F.3d 149, 154 (2d Cir. 2000).

Plaintiff alleges that she was subject to retaliatory action as a result of her decision to bring charges of discrimination against Defendants and vocalizing her distaste for Michel's behavior, but fails to plead any facts linking Plaintiff's actions to the subsequent alleged constructive termination. (See Pl.'s Mem. Law in Opp. at 14-15.) Therefore, Plaintiff has failed to meet her burden. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) ("a temporal relationship between a plaintiff's participation in protected

activity and an employer's adverse actions can . . . establish
causation").

Plaintiff has failed to present evidence sufficient to
satisfy the elements of a Constructive Discharge claim.
Accordingly, Plaintiff fails, as a matter of law, to create a
genuine issue of material fact on her Constructive Discharge
claim and accordingly Defendants' Motion for Summary Judgment is
GRANTED.

### D.   Newly Asserted Title VII Discrimination Claims

Following the initial amendments made to the Complaint,
Plaintiff seeks to assert additional claims, including Disparate
Impact and Disparate Treatment violations under Title VII, and
Selective Treatment under the Equal Protection Clause.

#### 1. Standard for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure requires
that courts freely grant leave to amend "when justice so
requires."  Fed. R. Civ. P. 15(a).  However, "[l]eave to amend,
though liberally granted, may properly be denied for: undue
delay, bad faith or dilatory motive on the part of the movant .
. . undue prejudice to the opposing party by virtue of allowance
of the amendment, futility of amendment, etc."  Ruotolo v. City
of New York, 514 F.3d 184, 191 (2d Cir. 2008) (internal

citations omitted).  While "[m]ere delay . . . absent a showing

of bad faith or undue prejudice does not provide [such] a

basis," a denial of leave to amend is "well within the bounds of

[the Court's] discretion" where "[Plaintiff's] delay in seeking

leave to amend was inexcusable given the previous opportunities

to amend, and the defendants' burden and prejudice."  Id.; see

also Beckman v. United States Postal Serv., 79 F.Supp. 2d 394,

408 (S.D.N.Y. 2000) (stating that it is "inappropriate to raise

new claims for the first time in submissions in opposition to

summary judgment" (internal quotations omitted)).

### 2. Plaintiff's Delay

Here, Plaintiff's delay in bringing its new claims has been

substantial.  Plaintiff waited three and a half years from the

time the Answer was filed on July 10, 2003 to the time it moved

to amend the Complaint on July 2, 2007 with its new claims for

Disparate Impact and Disparate Treatment.  Furthermore, during

that time an Amended Complaint and Answer were filed, as were

Requests to Charge, Trial Memoranda of Law, Proposed Voir Dire

Questions, a Joint Trial Statement, and two Orders dismissing

several of Plaintiff's claims.

Plaintiff contends that Defendants will suffer no prejudice

if she is permitted to amend her Complaint because discovery had

been completed for nearly three years at the time she filed her

Motion to Amend.  (Pl.'s Mem. Law in Opp. at 17.)  However,

21

Defendants' prejudice from Plaintiff's delay is not limited to the additional discovery that, despite Defendant's claims, Plaintiff would undoubtedly have to undertake in order to prepare to defend these claims.  Defendants' prejudice would also extend to the need to submit new pre-trial documents as well as to prepare for the possibility of additional motion practice.  If Plaintiff had brought these claims years ago, Defendant could have addressed them in tandem with Plaintiff's other claims without being forced to expend wasteful resources, duplicative efforts, and significant amounts of additional time.

Additionally, the fact that discovery had been completed for nearly three years at the time Plaintiff moved to amend, and that Plaintiff apparently believes it was obvious that a disparate treatment claim would eventually be filed, raises the disturbing possibility that Plaintiff has invoked these new claims at this time in bad faith.  This is especially so, given that the amended claims were filed in response to Defendants moving against Plaintiffs last remaining claims, and that Plaintiff offers absolutely no explanation for its delay.  (See generally, Pl.'s Mem. Law in Opp. at 16-18; Burden Decl.)  Even affording Plaintiff the benefit of the doubt, her decision to attempt to add these claims to the pleadings at the eleventh hour is at best a reckless display of lack of consideration for both Defendants' and the Court's time and resources.  Indeed,

the fact that all of Plaintiff's other causes of action have been determined finally not in her favor, strongly supports the futility of a further amendment. The facts will not change, no matter what legal theory Plaintiff tries to fit them into.

Accordingly, due to significant delay, prejudice to Defendants, Plaintiff's careless disregard of numerous previous opportunities to amend, as well as her failure to provide any justification for that conduct, leave to amend the Amended Complaint to state claims for Disparate Treatment, Disparate Impact, and Selective Treatment under the Equal Protection Clause is DENIED.

### III. CONCLUSION

For the reasons set forth above, State Defendants' Motion for Summary Judgment on the remainder of Plaintiff's Title VII claims is GRANTED. Plaintiff's Cross-Motion to Amend is DENIED. The Clerk of Court is directed to CLOSE the docket in this matter.

SO ORDERED.

Dated:     New York, New York
           March 31, 2009


                                   _Deborah A. Batts_
                                   DEBORAH A. BATTS
                                   United States District Judge


23